IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CASSANDRA GROGAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security | : | NO. 03-3033 |

REPORT AND RECOMMENDATION

JACOB P. HART                                                                                  DATE:   June 24, 2005
UNITED STATES MAGISTRATE JUDGE

      Cassandra Grogan brought this action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying her claim for Supplemental Security Income. The parties have filed cross-motions for summary judgment. As explained below, I recommend that the matter be remanded for consideration by the ALJ of the side effects of Grogan's medication, and, if necessary, for the taking of testimony from a vocational expert.

I.      <u>Factual and Procedural Background</u>

      Grogan was born on February 12, 1970. Record at 375. She obtained a GED after leaving high school. Record at 33-34. She worked in the past as a geriatric certified nurse's assistant. Record at 444.

      On May 3, 2001, Grogan filed an application for benefits, claiming disability since April 30, 2001 on the basis of a back disorder causing severe back and leg pain. Record at 375, 431. Her application was denied by the state agency. Record at 383. Grogan then requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). Record at 388. A hearing was held on June 13, 2002. Record at 84. However, the ALJ denied Grogan's claim for benefits. Record at 71. The Appeals Council denied Grogan's request for review, allowing the ALJ's decision to stand as the final decision of the Commissioner. Record at 82.

Grogan then filed an appeal in the United States District Court.  During that process, however, it emerged that most of the transcript tape for the June 13, 2002, hearing was blank. Record at 110.  For that reason, the District Court granted the Defendant's Motion and remanded the case pursuant to the sixth sentence of 42 U.S.C. § 405(g) so that the claim file could be reconstructed, and a new hearing held.  Record at 112.

A second hearing before the same ALJ was held on May 5, 2004.  Record at 30.  The ALJ once again found Grogan not to be disabled, in a decision dated July 12, 2004.  Record at 20. After the Appeals Council once again permitted the ALJ's decision to stand as the final decision of the Commissioner, Grogan filed the present appeal.  Record at 7.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and it has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work which exists in the national economy. *See id*. § 404.1520(b)-(f).

Schaudeck v. Commissioner, 181 F.3d 429, 431-432 (3d Cir. 1999); 42 U.S.C. § 423(d)(2)(A).

At stage five, an appendix to the Social Security regulations provides several tables, known as the medical-vocational guidelines, or "the Grids," which cross reference a claimant's exertionary level by his or her age, education, and skill level to reach a conclusion as to whether the claimant is capable of doing work other than that previously performed. 20 CFR § 404, Subpart P, Appendix 2; SSR 83-10. Each entry is a rule, and where a rule applies, it directs a decision of "disabled" or "not disabled." SSR 83-10.

III.   The ALJ's Decision and Grogan's Motion for Summary Judgment

In his decision, the ALJ determined that Grogan suffered from the severe impairment of degenerative disc disease in the lumbar spine. Record at 23, ¶ 2. He did not, however, fully credit her testimony. Record at 23, ¶ 5. He found that Grogan retained the RFC to engage in a full range of sedentary work. Record at 23, ¶ 4. Although he found that she could not return to her past work, he concluded that Rule 201.28 of Table No. 1 of the Grids directed a finding that she was not disabled. Record at 24, ¶ 9. He decided, therefore, that Grogan was not entitled to benefits. Record at 24, ¶ 11.

In her motion for summary judgment, Grogan argues that the ALJ (a) did not consider the side-effects of her medication; (b) was not entitled to rely upon the Grids in finding her disabled, since she suffers from the non-exertional impairments of fatigue and drowsiness from her medications; (c) did not adequately weigh the testimony of her treating physician, Dr. Skobinsky; (d) did not take into account her claims of pain in assessing her RFC; and (e) did not properly assess her credibility.

IV.     Discussion

A.     The Side Effects of Grogan's Medicine, and the Grids

Grogan indicated on her application for benefits that her medications have side effects. Record at 462. At the hearing, she testified that Tylenol IV made her sleepy and that "a lot of pills" made her nauseous. Record at 53. Where the issue of medication side-effects is raised, it must be considered by the ALJ. Burnett v. Commissioner of Social Security, 220 F.3d 112, 122 (3d Cir. 2000); Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983). Yet, the ALJ did not discuss Grogan's claim of side-effects in his decision. For this reason, remand is required. See Stewart, supra.

Clearly, fatigue and nausea are non-exertional impairments. If the ALJ concludes that they effect Grogan's ability to work – even if they are not work preclusive – reliance on the Grids will no longer be permissible. The Grids can be used without recourse to a vocational expert only where a claimant suffers from exclusively exertional limitations. Sykes v. Apfel, 228 F.3d 259, 273 (3d Cir. 2000). Therefore, upon remand, the ALJ may need to take testimony from a vocational expert.

Although Stewart clearly requires a remand to consider the side-effects of Grogan's medication, I do not believe that any further action is necessary on remand to address Grogan's other claims. For this reason, I will discuss them below.

B.       Dr. Skobinsky's Testimony

The ALJ explicitly refused to credit the findings made by Grogan's treating general practitioner, Dr. Gerald Skobinsky, in two Physical RFC Questionnaire Forms. Record at 282, 295. Dr. Skobinsky indicated in both forms that Grogan could sit or stand for less than two hours over the course of an eight-hour workday, and that she would need four or five fifteen-minute breaks. Record at 283-284; 296-297.

The ALJ wrote:

> Although the Administrative Law Judge will normally defer to the opinion of a treating physician, the probative value of Dr. Skobinsky's opinion is diminished by the lack of objective medical evidence to support such extreme functional limitations and is also inconsistent with claimant's activities of daily living which suggest a broader range of functioning. With regard to the latter, the Administrative Law Judge notes that claimant is the primary caregiver for her three dependent children and that she is able to do some household chores.

Record at 22.

A review of the record shows that substantial evidence supports the ALJ's conclusion. Although there is considerable evidence of a spinal impairment, and many reports of pain, the objective medical testing does not show extreme or advanced disease. An MRI of the lumbar spine taken on October 1, 2001, seven months after Grogan's alleged disability date, showed only "minimal" stenosis (i.e., narrowing in the spinal canal caused by encroachment of bone upon the nerves). Record at 123, Dorland's Illustrated Medical Dictionary, 28th Ed. (1984) at 1576. This is significant since, as Grogan herself has pointed out, it is encroachment, rather than disc

5

deterioration itself, which causes pain and neurological symptoms.  Grogan's Motion for Summary Judgment at 5, n. 14, citing Low Back Syndrome, (5th Ed. 1995 F.A. Davis) at 207. Nerve conduction studies taken the same date revealed disease of the nerve roots, but "no evidence of acute denervation."  Record at 260.

A lumbar MRI taken on February 6, 2003, showed a transitional vertebra – a congenital condition which does not, in itself, cause lower back pain.  Record at 364, Lumbosacral Transitional Vertebra:  Relation to Disc Degeneration and Low Back Pain, Luoma, Vehmas, Raininko, Luukkonen and Riihimaki, Finnish Institute of Occupational Health, available at http://www.ncbi.nlm.gov.  It also showed deterioration at L-5.  Record at 364.  "All of the other lumbar and visualized lower thoracic discs [were] normal."  Id.  There was "no further evidence of spinal nor foraminal stenosis."  Id.

It is also significant that Dr. Skobinsky is a general practitioner.  None of Grogan's treating specialists have offered an opinion as to her functional limitations.  The only other Physical RFC Assessment form in the file was completed by a non-examining Social Security physician who reviewed Grogan's records in August, September and November, 2001, and concluded that she was capable of the full range of sedentary work.  Record at 173.

Grogan argues that a treating physician's opinion is to be given great weight, and is even entitled to controlling weight, where it is well supported by clinical and diagnostic techniques. 20 CFR § 416.927; SSR 96-2p.  Here, indeed, the ALJ credited the medical evidence of pain and limited motion to the extent that he found Grogan capable of only sedentary work.  However, he accurately found that Dr. Skobinsky's extreme RFC findings were not well-supported by the other medical evidence.

The ALJ also noted that Grogan's activities of daily living were inconsistent with Dr. Skobinsky's findings. In so deciding, he looked not to her testimony (which is discussed below), but to her representations on her application for benefits. There, Grogan wrote that she still did perhaps a third of the housework she used to do. Record at 452. She also indicated that she could drive for 15-20 minutes, walk for two to three blocks, and carry one or two light bags of groceries. Record at 454, 456. Grogan's representations on her application are consistent with her report to Dr. O'Donnell, an examining psychologist, that "she is able to clean the house, but can not do so fully." Record at 148. Thus, substantial evidence supports the ALJ's decision not to credit Dr. Sobinsky's findings on his RFC evaluation forms.

C. The ALJ's Treatment of Grogan's Claims of Pain

Grogan testified before the ALJ that she experienced such severe pain daily that she spent most of her time in bed. Record at 41. She stated that, despite all her treatment, "nothing takes the pain away." Record at 40.

The ALJ, however, wrote in his numbered findings that: "Claimant's allegations of wholly disabling functional limitations are not supported by the evidentiary record." Record at 23, ¶ 5. Contrary to Grogan's argument, the ALJ adequately explained the basis for this determination. As noted above, he looked to the fact that Grogan described a much broader range of activities in her application for benefits. Record at 22. He also wrote:

> Claimant's representations that she receives considerable help from family and friends in caring for her children is somewhat inconsistent with her representations to Dr. Thomas Zavitsanos in August 2002 that she was unable to perform "her previously issued SI joint realignment techniques as suggested, due to the fact that she 'has three kids.'"

Id. Apparently, the ALJ construed Grogan's statement to Dr. Zavitsanos as meaning that she was busy taking care of her children.

7

Grogan cites <u>Frankenfield v. Bowen</u>, 861 F.2d 405 (3d Cir. 1988) for the proposition that an ALJ may not use activities of daily living to find that a claimant can work.  This was true in <u>Frankenfield</u>, however, because the ALJ looked *only* at the claimant's appearance and testimony about his activities, and had no medical evidence contradicting the opinions of all treating physicians that the claimant could not work.  861 F.2d at 408.  Significantly, he also failed to take into account the claimant's psychiatric impairment.  <u>Id</u>.

Here, by contrast, the ALJ relied not only upon the objective medical tests, but upon the opinion of the reviewing agency physician who repeatedly found that Grogan could engage in sedentary work.  Grogan has not objected to the ALJ's finding that any mental impairment was not severe.  Record at 21-22.

In sum, there is no apparent error in the ALJ's evaluation of Grogan's credibility.  I note, again, that he credited her claim of pain to the extent that he limited her to sedentary work, although he did not fully credit her testimony as to her limitations.

V.		Conclusion

In accordance with the above discussion, I make the following

**R E C O M M E N D A T I O N**

AND NOW, this   24th  day of June, 2005,  it is RESPECTFULLY RECOMMENDED that Plaintiff's motion for summary judgment be GRANTED IN PART AND DENIED IN PART; and it is further RECOMMENDED that Defendant's motion for summary judgment be DENIED; and the matter remanded for consideration by the ALJ of the side effects of Grogan's medication, and, if necessary, for the taking of testimony from a vocational expert.

						BY THE COURT:


						_____
						JACOB P. HART
						UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CASSANDRA GROGAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security | : | NO. 03-3033 |

O R D E R

JOHN R. PADOVA, J.

AND NOW, this ____ day of _____, 2005, upon consideration of the Plaintiff's Motion for Summary Judgment, and the Defendant's Motion for Summary Judgment, and after careful review of the Report and Recommendation of United States Magistrate Jacob P. Hart, IT IS ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED.

2. The Defendant's Motion for Summary Judgment is DENIED.

3. The Plaintiff's Motion for Summary Judgment is DENIED.

4. The matter is ordered REMANDED for consideration by the ALJ of the side effects of Grogan's medication, and, if necessary, for the taking of testimony from a vocational expert.

BY THE COURT:

_____
JOHN R. PADOVA, J